## Pepper's Estate.    Mercantile Library Company's Appeal.    Philadelphia City Institute's Appeal.

*Will—Gift to charity to be organized.*

A testator gave " To the trustees of such Free Library which may be established in the city of Philadelphia, east of the river Schuylkill, and south of Market street, $150,000."    After testator's death a corporation was formed, known as the " Free Library of Philadelphia."    Prior to testator's death there were three free libraries in Philadelphia situated within the limits prescribed by the will.    To one of these testator gave a legacy of $10,000.    One of the three libraries was a free law library. The executors paid over the money to the corporation formed after testator's death, although, at the time of the payment, it was not the owner of a library.    *Held,* that the fund was properly distributed.

Argued Jan. 24 and 25, 1893.    Appeals, Nos. 43 and 96, by the Mercantile Library Company and the Free Library of the Philadelphia City Institute, from decree of O. C. Phila. Co., Oct. T., 1890, No. 233, distributing estate of George S. Pepper, deceased.    Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ.    WILLIAMS, J., absent Jan. 24th.

Audit of account of John S. Gerhard et al., executors of

George S. Pepper, deceased.   (Reported below, 1 Dist. R. 148.)

The facts appear from the following opinion of the auditing judge, by FERGUSON, J. :

" The testator died May 2, 1890, having first made his will dated November 30, 1889, and duly probated.   By this will the testator gave a large number of pecuniary legacies to relatives and others and to religious and charitable institutions, and as to the residue of his estate he directed :

" ' All the residue of my estate I give and bequeath to James Leonard, W. P. Pepper and John S. Gerhard, in trust to be divided pro rata among the various institutions, societies and associations hereinbefore named, to be held by them in trust as endowment fund, the interest only to be expended for the use of said institution.'

" The testator gave : ' To the Trustees of such Free Library which may be established in the city of Philadelphia, east of the river Schuylkill and south of Market street, $150,000.'

" This bequest gave rise to considerable controversy.   It appears that the executors paid it, less the collateral inheritance tax, to an institution incorporated on the 18th of February, 1891, by the name of ' The Free Library of Philadelphia.'   This payment it is alleged was improperly made, and it is claimed that the accountants should be surcharged therewith, and the legacy given to either one of three other institutions, each of which claimed the same, to wit: The Philadelphia City Institute ; the Mercantile Library of Philadelphia ; the Hirst Free Law Library.

" It was also claimed, on behalf of the next of kin of the testator, and also by those interested in his residuary estate, that the whole bequest fell by reason of its being indefinite, and also as being in violation of the rule against perpetuities. This claim will be considered hereafter.

" With regard to the three libraries claiming, it may be said that they were in full being and existence and having a local habitation and a name at the time the testator wrote his will, and therefore, if he had meant either of them to be the recipient of this legacy, he could have easily called them by name, which he did not do.   It must be presumed, then, that he did not mean either of them.

" In the next place they were all established institutions at that time, while the testator no doubt meant this legacy for a library to be established.   If he had said for such free library as ' is established ' or ' has been established,' then, if these claimants are free libraries, they might perhaps be in the position to take this legacy, but the testator evidently contemplated a new institution, something to be established, and this bequest was intended as the nucleus of a fund for that purpose.   The same bequest was contained in a previous will executed by him in which he used exactly the same language with reference to this legacy, excepting that he added the word ' hereafter,' making the sentence read, ' Such'free library as may be hereafter established.'   The intention of the testator in this respect was made clearer still by the evidence offered.   For while, as a rule, every will must be interpreted from what appears in the four corners of it, yet where there is an alleged ambiguity as to the person who is to take, evidence may be admitted to ascertain whom the testator meant.   The evidence in this case shows that the testator had been interested in the subject of a free library in Philadelphia for some time previous to his death ; he wanted something entirely different from any library then in existence, something that would be free to all.   He had in his lifetime, in connection with other gentlemen, subscribed a considerable sum of money for the establishment of such an institution, but the scheme then failed, and he had expressed the intention of leaving something in his will for this purpose in the hope that others would be thereby induced to subscribe, and a sufficient sum be thus raised.

" From what has been said it is evident that neither of the three institutions appearing as claimants of this legacy were in the mind or contemplation of the testator at the time he wrote his will, and for this reason alone their claims might well be dismissed ; but the auditing judge does not think, while they are each located in the bounds fixed by the testator and thus answer the description of the legatee in that respect, either of them answers that description in the essential particular of being a ' free library,' in the generally accepted meaning of that term.

" The object of the Philadelphia City Institute, as stated by its charter, is ' The promotion of the moral and intellectual

improvement of young persons by means of the library and reading room, lectures and class instruction and such other measures as the board of managers may adopt.' It is supported by subscriptions, and subscribers have the use of the library of the institution, which is a large and valuable one. At the same time, by article V. of the by-laws, ' Persons of both sexes may be admitted to the use of the library and reading room free, and may be allowed to take out books without charge upon the recommendation of any manager, or giving a guarantee for the safe return of the books loaned.' It will thus be seen that this institution has a free library as a part of its system for the moral and intellectual improvement of young persons, but this free library is made such by a by-law which can be altered and changed or repealed entirely at any time by the board of managers. Besides, the free library is not the object of the organization, it is only an incident thereof, along with lectures, class instruction, or any other means of education that the managers may adopt; but the benefit intended to be conferred by them all is limited to ' young persons.' This is not the kind of a free library the testator had in view. It was one that would be a library in the strict sense of that word and meet the wants of all, young and old, without restriction as to age or sex, and absolutely free.

"With regard to the Mercantile Library Company, it was organized as a library, but the use of its books is restricted to stockholders and annual subscribers, excepting that the general public are allowed to consult books in the library room free of charge or take ' books that are not new' home by making a deposit of double their value and paying for their use ten cents for every week or part of a week, etc. This can hardly be called a free library. Besides, as the testator gave this institution a separate legacy of $10,000, it is not possible that he meant it as the legatee of the legacy now under consideration, or he would have said so.

" With regard to the Hirst Free Law Library, it is only necessary to say that this was established by the will of the late Lucas Hirst, Esq., ' for a separate exclusive law library for the use of students and lawyers, free of charge.' This is no doubt a free library, but the testator wanted a library free for all and not for one whose use, in a city of upwards of a million inhabit-

ants, would be restricted to less than a couple of thousand, nor did he mean a technical library of any kind, whether of law, theology, medicine, or what not.

"In reference to the institution to which the accountants have paid this legacy, to wit: ' The Free Library of Philadelphia,' it is admitted that the same had no existence in law or in fact at the time the testator made his will or at the time of his death, and that it has been organized and chartered since, for the sole end and purpose of qualifying itself to take this legacy to establish a free library in the city. The names of the gentlemen who appear as the corporators and officers of the institution is a sufficient guarantee of the integrity of the effort to effectuate the intention of the testator in this regard.

"But it is alleged that the gift is void: (1) Because the donee of the gift is indefinite. (2) Because the gift is a violation of the rule against perpetuities.

"From what has been said, it is clear that there is no indefiniteness as to whom the testator meant to give his legacy. He, in the opinion of the auditing judge, meant it for a free library to be established. This disposes of the argument that the recipient of this legacy is not an established library in the sense of having a building, books, etc. And the question whether the sum given is sufficient for the purpose of establishing a library or not, does not enter into the consideration; that is the purpose for which it is to be applied. Even though the gift were indefinite, the charitable purpose of the donor would be carried into effect: 1 Jarman on Wills, 216; Magill v. Brown, Brightly's R. 347.

"Whether the bequest is in violation of the rule against perpetuities presents a more difficult question, but one, however, which we think, with regard to charities, must be regarded as settled in this state, whatever the law may be elsewhere. The same objection was made against the will of Mr. Girard, and if it had succeeded, the greatest charity that exists in the world to-day would be stricken down. The tendency of the courts of this state has been to sustain gifts of this kind. As was said by Judge STRONG in Foreign Missionary Society's Appeal, ' Legacies for a religious or charitable use have always been pre-eminently favored in Pennsylvania:' 6 Casey, 425. Certainly such a gift should not be wantonly set aside, but the as-

tuteness of the court exercised, if necessary, to maintain and uphold it.

" Mr. Gray in his work on Perpetuities says that the rule against perpetuities would be more appropriately called the rule against remoteness.  The objection to this bequest therefore is that it is too remote.  The corporation or person who is to take this legacy had no existence at the death of the testator and might not have during a life or lives in being and twenty-one years afterwards.  This is true; but there are exceptions to every rule, and one of the exceptions to this one is the case of a gift to a charity.  In such cases the court will allow the fund to be transferred to a corporation not in existence at the time of the gift, if such corporation is constituted in a reasonable time afterwards.  The cases where charitable gifts to nonexistent corporations or societies have been sustained are numerous: Gray on Perpetuities, page 369, and the numerous cases there cited.

" But in this state, as we said before, we must consider the question as settled.  In Witman v. Lex, 17 S. & R. 93, the Supreme Court, in sustaining a charitable bequest, said that it is immaterial whether the person to take be in esse or not, or whether the legatee was at the time of making the bequest a corporation capable of taking or not, or how uncertain the objects may be, if the intention sufficiently appears in the bequest it would be held valid.  To the same effect see also County of Lawrence v. Leonard, 83 Pa. 206 ; Zeisweiss v. James, 63 Pa. 465 ; Magill v. Brown, Brightly's R. 347 ; Pickering v. Shotwell, 10 Barr, 23 ; Phila. v. Elliott, Executor, 3 Rawle, 170 ; Cresson's Ap., 30 Pa. 437, etc.

" The auditing judge is therefore of the opinion that the payment of this legacy to The Free Library of Philadelphia was a proper one, and this surcharge is therefore refused."

Exceptions were dismissed by the court, in an opinion in part as follows, by HANNA, P. J.:

" It is of primary importance to notice it is not an absolute bequest for the general purposes of the library, but is coupled with a trust, and by a prior provision of the will it is directed that the income only arising from the principal of the legacy is to be applied to the uses of a corporation or institution 'which may be established' as a 'free library.'  If testator had in mind

either of the libraries already established in the city, and within the limits fixed by him, which it is contended are free libraries, and were intended by him as the recipient of his gift, it is safe to say he would have identified it either by its corporate title, or in some other manner, by which, with reasonable certainty, it could be selected as the legatee intended. But this he has not done, and there is nothing in the will, or in the evidence, showing the slightest reference to a library already in existence, at the date of the will. The true interpretation of the language employed by testator we think is that adopted by the auditing judge. And as shown by him, if testator intended to benefit a library already in existence, he would naturally bestow his gift, by the use of the expressions 'such free library already established' or 'now established' or 'is established' or 'has been established' or other synonyms. But such was not his meaning. On the contrary, he evidently contemplated the establishment of a free library in the future. And it is in effect as if he had said 'to the trustees of such free library as shall be hereafter established.' It therefore seems so clear to us that further discussion is unnecessary.

"A more important question, however, is raised by the next of kin of testator, and also on behalf of the residuary legatees, viz., that the bequest to the trustees of 'such free library,' etc., is a violation of the rule against perpetuities, and therefore void, and should be awarded either to the next of kin or the residuary legatees. But upon this point we think the solution of the question is presented by the provisions of the act of May 9, 1889, Purdon, 2450, pl. 1, which seems to have been enacted to meet a case like the present, and, as shown by STERRETT, Justice, in the recent case of Hendrix's Account, 146 Pa. 285, should be construed 'to be auxiliary to and in aid of the purposes' of the former act upon the same subject, viz., the act of April 26, 1855, Purdon, 250, pl. 22. Testator's will bears date November 30, 1889, subsequent to the passage of the act. And the act of 1889 expressly declares that 'no disposition of property heretofore or hereafter made, for any religious or charitable use, shall fail for want of a trustee, or by reason of the objects ceasing, or depending upon the discretion of a last trustee, or being given in perpetuity, or in excess of the annual value limited by law; but it shall be the duty of any court

having equity jurisdiction in the proper county to supply a trustee, and by its decrees to carry into effect the intent of the donor or testator, so far as the same can be ascertained and carried into effect consistently with law or equity,' etc.

"It is too late to doubt that a 'free library' is a charitable use.   This being the case, the testator has made a disposition of his property within the contemplation of the act, but failed to appoint a trustee or trustees to carry out the object of his bequest."

The court further held that the payment to the Free Library of Philadelphia had been improvidently made; and, as provision for the location was contained in the by-laws but not the charter, the court required the trustees, William Platt Pepper, C. Stuart Patterson and William Pepper, M. D., to give bond conditioned (1) that the Free Library of Philadelphia shall be established and permanently located in the city of Philadelphia east of the River Schuylkill and south of Market street; and (2) that the principal of the legacy, less the collateral inheritance tax, shall be kept intact and the income only thereof expended for the use of the institution; and thereupon approved the payment.

*Errors assigned* were dismissal of exceptions, quoting them.

*Charles Henry Hart, Robert H. Hinckley* with him, for the Mercantile Library, cited: Donohugh's Ap., 86 Pa. 306; Porter's Ap., 94 Pa. 336; Newell's Ap., 24 Pa. 199: White's Trusts, L. R. 33 Ch. Div. 449; Lawrence v. Leonard, 83 Pa. 206; Zeisweiss v. James, 63 Pa. 465; Pickering v. Shotwell, 10 Pa. 28; Phila. v. Elliott, 3 Rawle, 170; Missionary Society's Ap., 30 Pa. 435; Alter's Est., 19 Phila. 9.

*G. Heide Norris* and *George W. Biddle*, for the Philadelphia City Institute, cited: Strode v. Russel, 2 Vern. 624; Baylis v. Atty. Genl., 2 Atk. 239; Hunt v. Hunt, 3 Bro. C. C. *312; Tilton v. The Bible Society, 60 N. H. 377; Campbell's Est., 31 Pitts. L. J. 423; The Missions, etc., near Port Cresson, 30 Pa. 425; Patch v. White, 117 U. S. 210; Newell's Ap., 24 Pa. 197; Van Renssellaer v. Penniman, 6 Wend. 582; Smith v. Forrest, 49 N. H. 237; 1 Story on Const. § 454; 14 A. & E. Enc. L. 984.

*John G. Johnson, J. Bayard Henry* with him, for The Free Library Company of Philadelphia.—Appellants are not free libraries: Donohugh's Ap., 86 Pa. 306; act of April 14, 1868, P. L. 1064. If the bequest fails, the heirs and next of kin take: Act of July 7, 1885, P. L. 259. But the gift was not void: Act of May 9, 1889, P. L. 173.

*George Wharton Pepper* and *Joseph B. Townsend*, for the executors, cited: Sutton's Hospital Case, 10 R. *33 a; Inglis v. Sailor's Snug Harbour, 3 Pet. 99, 115, 144; Gray, Perp. § 607, and cases there cited; Acts of April 26, 1855, July 7, 1885, and May 9, 1889.

PER CURIAM, February 6, 1893:

These appeals may be considered together. Both involve the construction of the following bequest in the will of the late George Pepper, deceased: "To the Trustees of such Free Library which may be established in the City of Philadelphia, east of the River Schuylkill, and south of Market Street, $150,000."

The executors have paid over this legacy to the trustees of the corporation, known as the "Free Library of Philadelphia." It is not pretended that this corporation is the owner of a library at the present time, but it was contended that its purpose is to establish a library of the character contemplated by the testator and within the prescribed bounds. This payment has been sanctioned by the orphans' court, and from its decree the respective appellant corporations have taken these appeals to this court.

The ground of their contention, briefly stated, is that they come within the description contained in the will, and being libraries already established are entitled to the fund.

If we concede that the payment of the fund in controversy to either of these corporations would have met the requirements of the will, it does not advance either of the appellants a single step in the way of getting this money, unless it first be shown that the Free Library of Philadelphia, to whom the legacy was awarded by the orphans' court, does not come within the description.

We quite agree with the learned judge of the orphans' court

that the testator contemplated the creation of a new library in the future. He must have known, from the interest which he evidently took in the subject of libraries, all about the two corporations appellants, and if he had intended the fund to go to either of them he would have so declared in his will. As to one of them at least he left a pecuniary legacy of $10,000, which excludes the idea that he intended that it should also take the bequest aforesaid. We think the fair construction of the testator's will to be that he intended this sum to aid in the formation of a new free library within the prescribed limits. The subject is so fully discussed by the learned court below that we need not pursue it further.

The decree is affirmed and the appeals dismissed at the costs of the respective appellants.