## Terrell Estate

*Robert McCullough, Esq.* and *Sidney M. Carlburg,* for petitioner.

*English, Gilson, Bowler, Shamp & Levin,* for heirs.

*Edward H. Carney,* Special Deputy Attorney General, for Commonwealth.

DWYER, P. J., March 4, 1964.—This case arises out of the filing of a petition for interpretation of the will and asking for a decree of partial intestacy. Decedent, George W. Terrell, died May 23, 1960, and his will, which was dated July 15, 1959, was admitted to probate by the Register of Wills of Erie County, Pa., on June 15, 1960, and letters testamentary were granted to Doctor Merritt Terrell, the executor named in the will.

Among the assets of decedent were four insurance policies, all payable to the "Estate" of decedent. The executor applied for and received the proceeds of all four of said insurance policies. One of the policies was a "group insurance" policy written by the Metropolitan Life Insurance Company on employes of the General Electric Company where decedent had been employed.

Decedent made beneficiary changes on all four policies at or shortly after the date of his will, and in all four instances the changes made the policies payable to his "Estate".

Concerning the Metropolitan Life Insurance policy, counsel for the heirs argued that it should be paid directly to the heirs of decedent and not to the executor as an asset of the estate for two reasons:

(a) One reason is that the Act of May 17, 1921, P. L. 682, art. IV, sec. 418, added April 26, 1929, P. L. 785, sec. 1, 40 PS §534, provides:

"No policy of group insurance, nor the proceeds thereof, when paid to any employee or employees thereunder, shall be liable to attachment, garnishment, or other process, or to be seized, taken, appropriated, or applied by any legal or equitable process or operation of law to pay any debt or liability of such employee, or his beneficiary, or any other person, who may have a right thereunder, either before or after payment, nor shall the proceeds thereof, when not made payable to a named beneficiary, constitute a part of the estate of the employee for the payment of his debts."

(b) The other reason is that there is no such entity as an "estate" and that none of the four policies should be payable to anyone except decedent's heirs and that the proceeds should not be used as assets of the estate.

Concerning the statute set forth above we find no quarrel with counsel for the heirs and hold that the proceeds of the Metropolitan Life Insurance policy are not to be used by the executor to pay any of the debts of decedent. This does not mean, however, that the proceeds of this and the other three policies cannot be paid to the executor and distributed by him as assets of the estate. The proceeds of the Metropolitan Life Insurance policy and the other three policies are assets of this estate and the proceeds are to be handled as assets, except that the proceeds of the Metropolitan Life Insurance policy are not to be used to pay any of the debts of decedent. See Jackman's Estate, 51 D. & C. 69 (1943), where the court said that such a "fund is part of the estate for every other purpose than the payment of debts".

Looking at the will as a whole and considering that deceased changed the beneficiary of his policies at or about the same time that he made his will, we find that it was decedent's intent that his policies be payable to his "Estate" and by that he meant the proceeds of the policies should be paid to his executor to be handled as an asset of his estate. We agree, however, with counsel for the heirs that there is no such entity as an "estate" but believe that decedent's intent and desires must be followed, and conclude that by "Estate" he meant the proceeds should be entered as an asset in his estate and handled by his executor and not that the proceeds should be paid directly by the insurance companies to his heirs. See Fitzgerald v. Fitzgerald, 73 D. & C. 170, 174 (1950).

Counsel for decedent's heirs raises two other serious questions concerning decedent's will. Since both of

these questions are concerned with the fifth paragraph of said Will, we will set forth said paragraph in full.

"Fifth: All of the rest, residue and remainder of my Estate, be it real, personal, or mixed, of whatsoever the same may consist and wheresoever the same may be situate at the time of my death, I hereby give and bequeath in the manner following:

"One Third of my Estate to Doctor Merritt Terrell, to be used by him for the care, maintenance and treatment of indigent and needy persons who are not financially able to pay the same, absolutely.

"Two Thirds of my Estate to Doctor Merritt Terrell to hold in trust for the following uses and purposes: To provide scholarships to colleges and/or universities, for high-school graduates under terms and arrangements to be left at his discretion."

The first question raised concerns itself with "One Third of my Estate to Doctor Merritt Terrell, to be used by him for the care, maintenance and treatment of indigent and needy persons who are not financially able to pay the same, absolutely."

The heirs of decedent contend that this language does not set up a valid trust. They argue that this is not a charitable trust; also that it was not a bequest to Doctor Merritt Terrell, the executor, for his personal use; and that it could only be construed as an attempt to make a private trust which, because of its terms, fails for indefiniteness and offends the rule against perpetuities. Consequently, they argue that the principal of this bequest, being undisposed of, would go by intestacy to the heirs and next of kin.

The Attorney General appears in this litigation parens patriae to protect the interest of the public in a gift to charity. In his brief he states that the wording of the above portion of the will creates a valid charitable trust; that Doctor Terrell is to act as trustee of the fund, and to use it within his sole discretion for

the care, maintenance and treatment of indigent and needy persons.

Counsel for Doctor Terrell argues that the words show an absolute gift of one-third of the residue to Doctor Merritt Terrell. With this latter view we agree. We must find what testator's intent was when he drafted the will. To find this we look at the entire will. The second paragraph of the will makes a bequest of $1,000 to the trustees of a Church *"absolutely."* (Italics supplied). The third paragraph makes a similar bequest to a Masonic Home *"absolutely."* (Italics supplied). The fourth paragraph makes another similar bequest to an Orphanage *"absolutely."* (Italics supplied). Consequently, in the fifth paragraph, when testator says: "One Third of my Estate to Doctor Merritt Terrell, *to be used by him . . . absolutely."* (Italics supplied.) We find that it shows a clear intent on testator's part that Doctor Terrell should use this money himself in caring for needy persons. We find that this is an outright gift by testator to Doctor Merritt Terrell and that no trust, charitable or private, was intended. The use of the words "to be used by him" and "absolutely" indicate that testator's primary intent was to make the bequest to the Doctor and the remainder of the language is merely precatory in character and reflects the desire, wish or recommendation of testator and is not imperative. See Greenawalt v. Greenawalt, 71 Pa. 483 (1872); Allen Estate, 347 Pa. 364 (1943).

The court's view is further borne out by the fact that in the paragraph of the will in question testator does not use the word "trust." It is true that it is not necessary to use this word in order to set up a valid trust, but, at the same time, it is apparent that the testator was aware that he could have set up a trust by using the word "trust," since he used the word in the next paragraph in actually setting up a trust.

For the above reasons the court finds that by the second paragraph in the fifth section of testator's will that testator intended an absolute gift to Doctor Merritt Terrell.

The last question raised by counsel for the heirs pertains to the following wording in paragraph 5 of decedent's Will:

"Two Thirds of my Estate to Doctor Merritt Terrell to hold in trust for the following uses and purposes: To provide scholarships to colleges and/or universities, for high-school graduates under terms and arrangements to be left at his discretion."

Counsel for the heirs states that these words indicate without any doubt, that testator meant to devise two-thirds of his residue to Doctor Terrell on a trust. It is argued that this cannot be a charitable trust, however, because "under terms and arrangements to be left at his discretion" allows Doctor Terrell to select as beneficiaries, and favor solely, members of his own family, his friends and relatives, at "his discretion". Counsel states that this possibility renders the gift definitely "non-charitable" even though the trustee might exercise discretion in a charitable way.

"The fundamental law of Pennsylvania in regard to property, which ought not to require restatement as often as it does, is that the owner may do as he pleases with it provided the disposition be not to unlawful purposes, and what he may do himself he may do by an agent while living, or by executor after death": Dulles' Estate, 218 Pa. 162, 163 (1907).

This court places an addendum to the above and holds that he may do the same by a trustee named in his will.

Decedent could have turned property over to Doctor Terrell in his lifetime and told Doctor Terrell to hold the property in trust and use it to provide scholarships to colleges and/or universities for high school gradu-

ates under terms and arrangements to be made at his discretion.

It seems obvious that testator intended distribution among others than Doctor Merritt Terrell, so that the gift to him was in a fiduciary capacity. There is, therefore, a trust. Testator gave specific instructions for the trustee to use his discretion. Testator's intent must be followed and the only authority of the court is to prevent a manifest diversion to a purpose clearly outside of the class described. If the trustee exercises his right of selection in good faith, he is following the express words of the will.

This court holds that the words in question create a charitable trust.

"(1) 'Charity' or 'charitable purposes' includes but is not limited to . . . the advancement of education, . . .": Act of April 24, 1947, P. L. 100, sec. 1, 20 PS §301.1.

The courts of Pennsylvania have always favored gifts for charitable purposes. Judge Arnold in Franklin's Admin.'x v. The City of Philadelphia, 2 Dist. R. 435, 436 (1893), said:

". . . we may congratulate ourselves that the law of Pennsylvania, as administered by her courts from the beginning of the province, has always been broad enough to discern the object of every charity, and to preserve and enforce it, notwithstanding any defects, such as want of power in the trustees or otherwise. The rule with us when a charity is created, is to adopt every means to uphold it; and every attack upon it, unless founded upon the strongest reasons, shall fail."

No gift for a charity should be wantonly set aside and the courts should use all their astuteness to maintain and uphold such a gift: Pepper's Estate, 154 Pa. 331 (1893).

In the case at bar no great amount of astuteness is needed to decide that testator created a valid charitable

trust and had no intent of leaving this part of the residue by intestacy to his heirs at law and next of kin.

There is a difference between that part of the will which creates the charitable trust and that part which directs the manner of its administration. In this case it is obvious that testator intended to create a charitable trust. It is also obvious that testator intended that the trust be administered at the discretion of the trustee. Since it is obvious that testator intended to create a charitable trust this court must follow that intent: Clark Estate, 359 Pa. 411 (1948). It is hornbook law that the ascertainment of this intention is the pole star long fixed for the guidance of the court in interpreting wills.

Counsel for decedent's heirs claims that the objects of testator's bounty are too vague and indefinite. This court believes that the words of the will clearly explain that the trust shall benefit "high-school graduates". This is not vague or indefinite.

In The Domestic and Foreign Missionary Society's Appeal, 30 Pa. 425, at page 435, the court said:

"The general rule may be stated thus:—In the case of a will making a charitable bequest, it is immaterial how vague, indefinite and uncertain the objects of the testator's bounty may be, provided there is a discretionary power vested in some one over its application to those objects."

It seems obvious that, in the case at bar, so long as the trustee is authorized to define and make certain the objects, the trust is not void for uncertainty. The trustee must select his individual choices of testator's bounty from a specific class and he is under an obligation to dispense this bounty within that class.

In view of the above this court feels that the second paragraph of the fifth section of testator's will establishes a valid charitable trust and that it names Doctor Merritt Terrell as trustee of this trust.

*Conclusions*

1. The proceeds of all four insurance policies on George W. Terrell's life have been paid into his estate and are to be treated as the asset of any estate is treated, except that the proceeds of the Metropolitan Life Insurance policy are not to be used to pay any of the debts of decedent.

2. One-third of the residue is to be distributed to Doctor Merritt Terrell absolutely.

3. Two-thirds of the residue is to be distributed to Doctor Merritt Terrell and said amount is to be held in trust by said Doctor Merritt Terrell, the principal and income of which shall be used for the purposes set forth in testator's will; that is, to provide scholarships to colleges and/or universities for high school graduates unders such terms and arrangements as to the trustee seems best.

*Order of Court*

And now, to wit, March 4, 1964, it is hereby ordered, adjudged and decreed

1. The proceeds of all four insurance policies on George W. Terrell's life have been paid into his estate and are to be treated as the asset of any estate is treated, except that the proceeds of the Metropolitan Life Insurance policy are not to be used to pay any of the debts of decedent;

2. One-third of the residue is to be distributed to Doctor Merritt Terrell absolutely; and

3. Two-thirds of the residue is to be distributed to Doctor Merritt Terrell and said amount is to be held in trust by said Doctor Merritt Terrell, the principal and income of which shall be used for the purposes set forth in testator's will; that is, to provide scholarships to colleges and/or universities for high school graduates under such terms and arrangements as to the trustee seems best.