# Haldeman *versus* Haldeman.

*Estate tail created by Will.—Children, when a word of Limitation.—Failure of Issue, Definite and Indefinite.—Testamentary Trusts.*

1. A testator by will, directed his executors to account for and pay over half-yearly to his three daughters, "and to each of them during their natural lives, the income or profit arising out of each of their share of the residue, and after the death of either, then to descend and go to the child, and if children, share and share alike; should however either of my daughters die, and leave no lawful issue, then such share or portion is to fall back again to the residue, and form a part of the same." *Held*, that the daughters took an estate tail in the residue of the testator's estate, which, under the Act of April 27th 1855, became an estate in fee simple.

2. Whenever, in the devise of a remainder to the "child" or "children" of the first taker, it clearly appears that those words are used in the sense of

[Haldeman *v.* Haldeman.]

"issue" or "heirs of the body," they are to be treated as words of limitation, describing lineal succession to an entail, and not as words of purchase in their usual sense.

3. The devise being to the daughters for life, with remainder to their children, the gift would lapse in default of issue, for the testator had defined the word child as meaning issue, and the legal consequence of a lapse in default of issue must follow.

4. There was no such trust executed by the will, as would prevent the operation of the rule, that an estate for life with remainder to the issue of the first devisee, is an estate tail in law.

ERROR to the Common Pleas of *Lancaster county.*

This was an amicable action in covenant entered March 5th 1860, in which Susan F. Haldeman was plaintiff and Paris Haldeman defendant, wherein the following case was stated for the opinion of the court in the nature of a special verdict.

Jacob M. Haldeman, the father of Susan F. Haldeman, on the 4th day of March 1854, made his last will and testament, which, he having died December 16th 1856, was proved December 20th 1856, and contains *inter alia* the following provisions, to wit:—

" The residue of my estate, real, personal, and mixed (being much the largest portion), I devise, leave, and will to all my children, share and share alike, with this reservation in regard to my three daughters, Sarah, Mary, and Susan, I will, direct, and charge my executors or the survivors of them, to account for and pay over half-yearly to Sarah, Mary, and Susan, and to each of them, during their natural lives, the income or profit arising out of each of their share of the residue, and after the death of either, then to descend and go to the child, and, if children, share and share alike. Should, however, either of my daughters, Sarah, Mary, or Susan, die, and leave no lawful issue, then such share or portion is to fall back again to the residue and form a part of the same. And whereas it has pleased Providence to spare my life until my family have arrived at an age competent, I hope, and willing to take charge of my estate, pay all my just debts, settle, manage, and conduct the same to the best interest of all concerned ; and having such entire confidence in my hereinafter named executors, my will and desire is to invest them with full power over my estate, to sell and make title, to purchase or exchange real estate, to invest in stocks or other securities, when and where deemed most to the interest of my estate."

The said Mary is a married woman with children, Sarah a widow without children, and Susan, the plaintiff, is unmarried.

The children, devisees and executors of said Jacob M. Haldeman made an amicable partition and division of the real estate, and, on the 19th of February 1857, deeds were made to each by all the others, for his or her share, the deeds to Susan F. Haldeman reciting the clause of the will relating to the residue as

[Haldeman *v.* Haldeman.]

hereinbefore given, and containing also the following provision, to wit:—

"To have and to hold the said hereditaments and premises hereby granted or mentioned or intended so to be, with the appurtenances, to the said party of the second part, her heirs and assigns for ever, as and for the same estate and interest, and subject to the same uses and limitations contained and prescribed in the will of the said Jacob M. Haldeman, her deceased father, and for no other or greater estate."

The said Jacob M. Haldeman died seised of the house and lot hereinafter described, which is part of the property conveyed to the said Susan F. Haldeman.

On the 24th of January 1860, the said Susan F. Haldeman, and the said Paris Haldeman, entered into a contract in writing by which the said Susan F. Haldeman agreed to sell and convey in fee to the said Paris Haldeman, in consideration of the sum of $1000, on or before the 24th day of February 1860, "the house and lot of ground on the north-west side of Locust street and between Front and Second streets, in the borough of Columbia aforesaid, bounded on the south-east by said Locust street, south-west by property of Frederick S. Bletz, north-west by property of M. D. Wilson, and north-east by other property of the grantor, being the property known as No. 1, Mechanics' Row, and containing in front fifteen feet and in depth one hundred feet, being a part of the premises which the executors and children and devisees of Jacob M. Haldeman, deceased, granted and conveyed to the said Susan F. Haldeman by deed dated February 19th 1857."

On said 24th day of February 1860, the said Susan F. Haldeman, in pursuance of said agreement, executed and tendered to the said Paris Haldeman a deed in fee for said house and lot of ground above described.

The said Paris Haldeman expressed his willingness to perform his contract, in case the said Susan F. Haldeman could make him a good and marketable title in fee simple to the premises; but he refused to accept the title tendered, alleging that the said Susan F. Haldeman had only a life estate therein, and could not make a good and marketable title in fee, according to the terms of the agreement.

If it be the opinion of the court that the plaintiff is seised of a fee simple estate under her father's will, then judgment to be entered for the plaintiff for the sum of $100; otherwise, judgment to be entered for the defendant, the costs to follow the judgment, and either party may sue out a writ of error to the next term of the Supreme Court, without oath or bail.

March 31st 1860, the executors of J. M. Haldeman, deceased, asked leave to join in defending the suit, which was agreed to.

[Haldeman *v.* Haldeman.]

The court below (HAYES, P. J.), on argument, directed judgment to be entered in favour of plaintiff for $100.

The case was thereupon removed into this court by the defendant and the executors of J. M. Haldeman, who assigned for error the entry of judgment as above stated.

*Thaddeus Stevens* and *Thomas E. Franklin*, for plaintiff in error.—That the whole of the clause in the will of deceased taken together indicates a clear intention to invest three-sixths of the residuary estate in the executors during the lives of his three daughters respectively, in trust to pay to each of them during her life one-sixth of the income or profit arising therefrom, and after her death to give it to her child or children, if more than one, share and share alike; and if either died without leaving lawful issue, then to direct that such share or portion should fall back again to the residue of his estate. That there was no entailment, because at her death the share was to be divided among her children, share and share alike. That the word "children" must, in this case, be construed according to its ordinary import as a word of purchase and not of limitation, and "dying without issue" to be referred to a definite period—the death of the daughter of testator: citing Gretton *v.* Howard, 1 Merivale 448; 6 Taunt. 94, reported in 1 E. C. L. R. 320; Bruce *v.* Bainbridge, 5 Moore; 2 Brod. & Bing. 123; 6 E. C. L. R. 43; Findlay *v.* Biddle, 3 Binn. 139; Abbott *v.* Jenkins, 10 S. & R. 296; Ellett *v.* Paxson, 2 W. & S. 418. They argued further that the general words in the first clause of the will, by which the estate was given, did not destroy the effect of the subsequent limitations, but were restrained by them, and limited the estate given to each of the daughters to an estate for life: Turbett *v.* Turbett, 3 Yeates 187. The Act of April 8th 1833, which provides that a devise of real estate shall pass testator's whole estate, marks this exception by enacting, "Unless it appear by a devise over, &c., that testator intended to devise a less estate." It is neither sound law nor good logic first to cut the clause of the will in two, and from the first section alone imply a fee simple on the presumed intent of the testator, and by force of the Act of 1833, and having established that, to destroy the second section and declare it inoperative and void as being inconsistent with the nature and quality of the estate given by inference in the first of the same clause of the will, contrary to the words and spirit of the exception contained in the Act of 1833. The right of a testator to carve a life estate out of the inheritance, and protect the latter from alienation by encumbrance by the grantor for loss, cannot be denied, and where this intention is manifest it should be carried out by the court.

[Haldeman v. Haldeman.]

*J. C. Kunkle* and *H. M. North*, for defendant in error, contended, that the estate taken by Susan under this will, is a fee simple, because as the words in the first paragraph prior to Act of 1855, would have made an entailment by that act, they are enlarged to an estate in fee, which cannot be restrained or controlled by the second paragraph—that if a trust is created by the will, it is without purpose, and she being *sui juris*, is entitled to the absolute control of the estate. The devise of the residue, to " all my children, share and share alike," would give to each an estate in fee : Morrison *v.* Semple, 6 Binn. 94 ; Foster *v.* Stewart, 6 Harris 23 ; Schriver *v.* Meyer, 7 Id. 87 ; Act of April 8th 1833, § 9. The reservation which follows vests in the executors no estate, is a mere suggestion for management, and if intended as a restraint on the devise, is inoperative : Reifsnyder *v.* Hunter, 7 Harris 41 ; Walker *v.* Vincent, 7 Id. 369 ; Hileman *v.* Bouslaugh, 1 Id. 353. The last sentence of the paragraph reduces the fee simple to a fee tail, which entailment is not prevented by the direction that at the death of the devisee, the property shall all go to the children, but makes it an estate tail general, descending to all the children generally of the first taker. Such estates are not included in the Intestate Act of April 8th 1833, regulating descents of real estate, and descend to the heirs generally, and not to the eldest son : Price *v.* Taylor, 4 Casey 95 ; Williams *v.* Leech, 4 Id. 89 ; Maurer *v.* Marshall, 4 Harris 380 ; Vaughan *v.* Dickes, 8 Id. 509 ; Amelia Smith's Appeal, 11 Id. 9 ; Braden *v.* Cannon, 12 Id. 168 ; Hansell *v.* Hubbell, 12 Id. 244 ; Rancel *v.* Cresswell, 6 Casey 158 ; Criley *v.* Chamberlain, Id. 161 ; Potts's Appeal, Id. 168.

They further argued that the limitation over, if " Susan die and leave no lawful issue," was founded on an indefinite failure of issue : Citing 4 Kent Com. 274 ; Braden *v.* Cannon, 12 Harris 171 ; Vaughan *v.* Dickes, 8 Id. 514 ; 2 Jarman on Wills.

Even if the devise over is in default of issue living at the death of Susan, it would be an estate tail general: Price *v.* Taylor, 4 Casey 107. If a fee tail before the Act of 1855, it is now by that act a fee simple.

The daughters' shares are not given to the executors in trust, but only for the purpose of settlement.

The opinion of the court was delivered, July 24th 1861, by

STRONG, J.—By the clause in his will devising the residue of his estate, the testator gave to his sons a fee simple. But it is clear that he did not intend to place his daughters precisely upon the same footing. True, there are general words of devise to all his children. They are coupled, however, with a reservation as to the shares of the daughters. The rents, issues and profits of each of those shares are given to the daughter for her natural
4 WR.—3

[Haldeman *v.* Haldeman.]

life, and after her death, the share is required to descend to her child, and if children, to them share and share alike. The will then directs that if either of the daughters should die and leave no lawful issue, the property shall fall back into the residue of the estate. The beneficial interest is thus limited to each daughter for her natural life. It is not, as was supposed in the court below, the case of a gift in fee, with a subsequent attempt to take away some of the qualities of a fee, or to direct the manner of its enjoyment. This will, like all others, must be construed, with every part of it in view, and so as to give effect to the testator's whole intention, unless it be in part contrary to law, or impossible. The construction given by the court below ignores no inconsiderable portion of the testator's language. Although it is true that a testator, after having given a fee simple, cannot denude it of its nature and properties; in other words, cannot make a fee something else than that which the law recognises as such, yet he may devise a less estate.

He may restrain the generality of a devise, by subsequent expressions, and convert that which otherwise would have been a fee simple into an inferior interest; and more frequently in this mode than in any other is a particular estate given. A reduction of the quantum of the gift is allowable, while all attempted alterations of its qualities must prove inoperative. Even the Act of Assembly which enacted that all devises of real estate shall pass the whole estate of the testator in the premises devised, although there be no words of inheritance or perpetuity, recognises the power of a testator to restrict the generality of his gift, for it adds, "unless it appears by a devise over, or by words of limitation, or otherwise in the will, that the testator intended to devise a less estate." Here, there is not only an express limitation of the duration of the estate to the natural life of the daughters, but a remainder over, immediately after the decease of each daughter to her child or children, with a direction that on the death of such daughter without leaving lawful issue, the property devised shall fall back to the residue of the testator's estate, and form part of the same. In other words, the will directs that the devise shall lapse in case the daughter shall die without leaving lawful issue.

But though the will cannot be construed as giving to the daughters, directly, a fee simple in that portion of Mr. Haldeman's estate which he denominated as the residue, yet if an estate tail was given to them, it becomes a fee simple by virtue of our Act of Assembly of April 27th 1855, § 1, P. L. 368. It is necessary, therefore, to inquire what was the extent of the interest given.

The devise was to each of the daughters for life, with remainder to the child or children of the first taker, share and

share alike, but without any superadded words of limitation. The words " child or children," by which the remainder-men were described, are, in their usual sense, words of purchase, and are always so regarded unless the testator has unmistakeably used them as descriptive of the extent of the estate given, and not to designate the donees. But they may be used as words of limitation. Mr. Hayes, in his Elementary Essay (page 35), asserts that the rules of construction freely permit the use of the words "heirs of the body," or "issue," in the limited sense of " children," in the comprehensive sense of "heirs of the body;" those rules, or rather, the fundamental principle of legal interpretation requiring only a clear explanation to justify a departure from the ordinary meaning, imposing on those who would translate the term, the *onus* of producing an express warrant under the hand of the author of the gift. Wherever, therefore, in the devise of a remainder to the "child" or "children" of the first taker, it is thus made clearly to appear that those words are used in the sense of "issue," or "heirs of the body;" they are to be treated as describing lineal succession to an entail. Cases are numerous of devises to one for life, or for life only, with remainder to his "son," or "first son," or "eldest son," in the singular number (all properly words of purchase), with a devise over in default of issue of the first taker, in which he has been held to take an estate tail, in order to let in other sons, who, without such a construction, would have been excluded. The estate tail has been implied from the devise over, and the word "son," or "eldest son," has been elevated into a generic term, embracing the whole line of male lineal succession, and therefore a word of limitation. Mr. Hayes has collected some of these in his third table. For similar reasons, limitations of a remainder to an unborn child or son of the first taker, have been held evincive of an intention to use the word "son" or "child," in the sense of "heir of the body:" Smith on Ex. Int. 537. These cases are important as showing that a manifest intent to use a word of purchase to express limitation, will be allowed to prevail.

Now, if this will be examined, it seems quite plain that the testator employed the words " child," " children," and "issue," indiscriminately, and all of them as meaning an entire line of lineal descent. He devised to each of his daughters for life, remainder to *descend* to the child or children, and the gift to lapse if the daughter should die and *leave no lawful issue.* The intent that the devise shall not lapse while lawful issue of the daughter remains, is evident. It is also evident that the point of time when the testator intended the estate given to the daughter and to her child or children to cease, and when the property was intended to fall into the residue of his estate, is

[Haldeman *v.* Haldeman.]

the same.   The termination of the estate and the lapse, were in his mind contemporaneous.   Here he uses the words child, children, and issue, as meaning the same thing.   And we think he used them all as meaning "heirs of the body," and not as descriptive merely of individuals.   I am aware that the general rule is, that when an express limitation to a particular class of issue,  by  an  appropriate  term  of  designation,  as  "son," "daughter," "children," is followed by the words "in default of issue," or others kindred thereto, introducing an ulterior devise, these words are referable to the object of that limitation, and not to an indefinite failure of issue.   They ordinarily do not refer to issue at large, and therefore do not commonly furnish ground for an implication of an estate tail in the first taker. See cases collected in 2 Jarman on Wills 368.   To this rule, however, there are many exceptions, and it is never applied when the word " children" is evidently intended to define an entire line of succession.

We think it does not apply in this case.   Here is no devise over after the land " *descends*" to the child or children.   The phrase, " should, however; either of my daughters, Sarah, Mary, or Susan, die, and leave no lawful issue," is not introductory to any ulterior devise.   Manifestly, the only purpose of the testator, expressed in the sentence containing it, was to declare anew the duration of the interest he had previously given.   In doing so, he has defined the sense in which he had used the words child and children, and shows an intent to express hereditable succession.   For if in this will, the word " issue" means " child" or " children," instead of those words meaning " issue" in the sense of " heirs of the body," the devise must lapse on the death of any of the daughters without leaving a child, though she should leave a grandchild.   This was not clearly the testator's intention. The true construction of the will then is, that it devises to the daughters for life, with remainder to their issue, and in default of issue the gift is to lapse.   This is only because the testator has defined the word child as meaning issue.   The devise is then an estate tail, which, under our Act of 1855, is to be construed as a fee simple.   We do not think that any such trust was created by the will as to prevent the operation of the rule that an estate for life with a remainder to the issue of the first devisee, is an estate tail in law.

The judgment is affirmed.