## Disston Estate.

Argued January 12, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and HUGHES, JJ.

reargument refused April 10, 1944.

*Thomas Stokes,* with him *William Carson Bodine,* of *Pepper, Bodine, Stokes & Schoch,* for Katherine Disston, appellant No. 258.

*Wesley H. Caldwell,* with him *J. Gowen Roper,* for Ella D. Stewart, appellant No. 255 and appellee No. 258.

*John B. Gest,* with him *Robert F. Irwin, Jr.,* of *Donahue, Irwin & Gest,* for Katherine Porter Hopkins, appellee.

*John C. Gilpin,* for Liberty Title, etc., Co., appellee.

*Joseph Gilfillan,* for Henry Disston et al., appellees.

*Carlyle H. Ross,* for Fidelity-Phila. Tr. Co., appellee.

*Murray H. Spahr, Jr.,* for Effie D. Mayer et al., appellees.

*Russell Conwell Cooney,* for guardian, appellee.

*Shippen Lewis,* for W. D. Disston, appellee.

OPINION BY MR. JUSTICE LINN, March 20, 1944:

There are two appeals and they raise different questions.

No. 258 depends on the interpretation of a family agreement dated May 3, 1932, in its relation to a trust created in the residuary clause of the will of Mary Disston, who died July 15, 1895. The residue was given in trust to pay the income ". . . semi-annually to my sons in equal shares, the children of any son of mine who may be deceased at the time of my death to receive the income which the parent would have received if living. But upon the death of any of my sons who may be living at the time of my death then I direct the proportion of the income which such son would have received if living to be paid to the children in equal shares of said deceased son, and if said son shall die leaving no children living said proportion of the income which such son of mine would have received if living shall be paid to the widow of said son until her death or re-marriage. Upon the death of the survivor of my sons and of their respective wives, I direct that my estate shall be divided among my grandchildren then living, per stirpes and not per capita, and this trust shall thereupon cease and determine."

She left surviving four sons and four grand-children, who were children of a fifth son, Albert, who died during her life. Her son William died in 1915 leaving two children and a wife who remarried and who died February 5, 1942. Hamilton died in 1896 leaving three children. Horace died in 1900 unmarried and without issue. Her last surviving son, Jacob, died February 28, 1938, leaving seven children and a wife who died in 1941. One of Albert's four children died intestate, unmarried and without issue in 1918.

At the audit of the trustee's sixth account, a point was made, apparently for the first time in the course of the long administration of the estate, that the trust for grandchildren, effective on the deaths of Mary Disston's last surviving son and his wife, was void for remoteness, as any of her sons might have married a woman not born until after Mary Disston's death. The learned court so held *(Friday's Estate,* 313 Pa. 328, 170 A. 123; *Griscom's Estate (No. 1),* 336 Pa. 419, 9 A.2d 344) and all parties concur in the decision.

The trust was valid until the death of the last surviving son; the principal then became distributable to Mary Disston's heirs and next of kin, as of the date of her death, except as modified by the family agreement. The parties differ on the interpretation of this agreement. The court held that the agreement, inter alia, provided for distribution, etc., as if the trust had been valid. Appellant, on the other hand, contends that the language used by the parties in the agreement shows that, when it was executed, they had no idea that part of the trust of the residue was void and therefore could not have intended to include their interests, obtained pursuant to the intestate law. Appellant is the executrix and beneficiary under the will of Frank Disston, a grandson (a son of Albert Disston mentioned above) who died without issue July 4, 1937, which was prior to the termination of the trust.

For present purposes it is unnecessary to recite at length the terms of the agreement; it dealt with distribution of (1) income, and (2) principal (excluding unconverted real estate) to be distributed on the death of the survivor of Jacob Disston and his wife, ". . . among the persons then entitled to the same under" Mary Disston's will, and (3) a large investment in unconverted real estate, which the parties thought could not then be distributed to advantage. The period of the trust was therefore extended.

It is well settled that family agreements will be supported whenever possible: *Strawbridge's Estate,* 322 Pa. 406, 185 A. 726. The trustee administered the trust pursuant to the agreement. We understand from the record that as late as June 21, 1938, the date of the audit of the trustee's account last preceding the account now before the court, the validity of the trust of the residue was assumed. In ascertaining the meaning of the agreement, which is the only question raised by this appeal, we must place ourselves as nearly as possible in the position of the parties when it was executed in 1932. All dealt with the trust of the residue as valid. One of the declared objects of the agreement was ". . . the advantage of the judgment of the Trustee and of a united action in the management of an undivided ownership in the property. . . ." They provided that the trust should continue ". . . until and shall determine on the death of the last survivor of the parties of the first, second, third and fourth parts hereto, unless such deaths shall not have occurred before January 1, 1952, in which event this trust shall terminate January 1, 1952." It may be, though we attach no importance to the fact in deciding the case, that the generally known condition of the real estate market in Philadelphia at that time had something to do with the agreement.

The parties severally granted, etc., to the trustee ". . . all their right, title, interest, claim and demand of whatsoever nature to which they now are or may hereafter become entitled in and to the Trust created by the Third paragraph of said testatrix's Will with respect to her residuary estate." They intended, inter alia, to extend the term, increase the powers of the trustee and obtain certain benefits for each as specified in the agreement. All were under the same misapprehension—ignorance of what had been acquired pursuant to the Intestate Act. There was no fraud. When, therefore, each contributed to the trust property the right, etc., to which he was then or might thereafter become ". . . entitled in

and to the Trust created by the Third paragraph of said testatrix's will . . ." all understood, although mistaken, that they were treating the trust as valid and were adopting and augmenting the provision of the residuary clause. The assumed validity was a fact in the negotiation. Each understood that every other party would understand that the words in the agreement were used in the same sense and were intended to express what they had all agreed to. In such circumstances it is immaterial that their assumption of fact was based on an error of law.* Cf. *Wanamaker's Estate,* 335 Pa. 241, 6 A.2d 852. In *McMillin v. Titus,* 222 Pa. 500, 502, 72 A. 240, 241, we said: "Where the terms of the promise admit of more senses than one, the promise is to be performed in that sense in which the promissor apprehended at the time the promisee received it: *Williamson v. McClure,* 37 Pa. 402, 408. Every agreement is to be interpreted and construed with reference to the circumstances under which the parties contract: COULTER, J., in *Callen v. Hilty,* 14 Pa. 286, 288. The words of a grant are to receive a reasonable construction, and one that will accord with the intention of the parties; and, in order to ascertain their intention, the court must look at the circumstances under which the grant was made: *Connery v. Brooke,* 73 Pa. 80, 83. A contract should be construed in the light of the surrounding circumstances and the objects manifestly to be accomplished: *Richardson v. Clements,* 89 Pa. 503, 505; *McKeesport Machine Co. v. Insurance Co.,* 173 Pa. 53, 57."

Frank Disston, appellant's husband, acted under the agreement in providing by his will for his widow, the

---

* Compare the cases applying the rule that parties may so conduct themselves that transactions, pursuant to statute assumed to be valid but subsequently found unconstitutional, will be supported: *Strauss v. W. H. Strauss & Co.,* 328 Pa. 72, 77, 194 A. 905; *City Deposit Bank & Trust Co. v. Zoppa,* 336 Pa. 379, 382, 9 A.2d 361; *Hepburn v. Hey,* 345 Pa. 125, 127, 26 A.2d 318.

appellant. We all agree that the order appealed from in No. 258 must be affirmed, costs to be paid out of principal.

### No. 255—Appeal of Ella D. Stewart.

At number 255, the dispute is between the appellant, Mrs. Stewart, and her niece, Mrs. Hopkins. The appellant is a grandchild of Mary Disston and the only child of Albert living at the time for the distribution of that part of the principal now distributable. Her brother, Frank Disston, and her sister, Florence D. Porter, died before the time fixed for this distribution. Mrs. Porter left a child, Mrs. Hopkins, the appellee. The appellant, as the only representative of the Albert Disston line in the class of grandchildren, claimed one-fourth of the principal and the learned auditing judge awarded it to her. On exceptions to the adjudication, appellee claimed one-half of one-fourth on the ground that testatrix, by the phrase "grandchildren then living, per stirpes and not per capita," considered with the entire residuary provisions, intended that great-grandchildren, who were children of a deceased grandchild, should share per stirpes with grandchildren. The court in banc (the auditing judge dissenting) sustained appellee's exceptions and awarded one-eighth of principal to her.

The rule in such cases is, as Judge Gest said in *Williamson's Estate,* 3 D. & C. 1, adopted by the Superior Court, 82 Pa. Superior Ct. 444, 446, that ". . . such a broad interpretation will not be given to the bequest, unless it clearly appears from the context to have been the meaning of the testator, or unless the will would otherwise be inoperative." On the application of that principle to the record before us, the six members of this court who heard argument are evenly divided; the order appealed from is therefore affirmed, costs to be paid out of principal.

Mr. Justice Allen M. Stearne, having participated in the decision in the court below, while a member of that court, took no part in the decision in this court.