## Carr Estate

Before Klein, P. J., Bolger, Lefever, Saylor and Shoyer, JJ.

The facts appear from the following adjudication of KLEIN, P. J., June 2, 1959.—Rose Carr, also known as Rose Di Gregorio, died on May 8, 1955, intestate,

leaving to survive her, as her heirs-at-law and next of kin, her husband, John J. Carr, and her daughter, Gloria Di Nicolantonio. Letters of administration were granted on August 5, 1955, and proof of advertisement of notice thereof was produced to the auditing judge . . .

The statement of proposed distribution requests that the balance for distribution in the present estate be awarded to Gloria Di Nicolantonio, decedent's daughter, on the ground that John J. Carr, decedent's husband, relinquished his rights in the present estate "under the terms of a post nuptial agreement dated August 30, 1954. At the audit an appearance was entered by Mr. Back on behalf of the said John J. Carr, who claimed his intestate share of the estate.

It appears from the testimony taken at the audit that decedent married Rigoletto Barinella, whom she divorced in 1930. One child, Gloria Di Nicolantonio, was born of that marriage. In 1951 decedent married John J. Carr, with whom she was living when she died in 1955. At the time of the marriage and at her death she was the owner of premises 1939 S. Bonsall Street, Philadelphia, which, in effect, constituted her entire estate.

It appears from the testimony that decedent and her husband were separated for a period of several months in 1954. While they were so separated they entered into two written agreements, both dated August 30, 1954. The first is designated "Post Nuptial Agreement", the second "Agreement Between John J. Carr and Rose Carr" with no other designation.

The "Post Nuptial Agreement" recites that Rose Carr, decedent, prior to and at the time of the marriage was the owner of 1939 South Bonsall Street, that "it is the desire and intention of the parties hereto, to relinquish any and all right, title and interest which they, their heirs, administrators or assigns now

have or may have in and to any real or personal property now owned or to be acquired by either of the parties." No reference is made in this agreement to the fact that the parties were separated when the contract was made or to the second agreement.

The second agreement recites, inter alia:

"WHEREAS, disputes have arisen between the husband and wife, on account of which they are separated and now live apart and intend to live apart from each other during the remainder of their natural lives, And

"WHEREAS, the said husband and wife executed a separate agreement simultaneously and concurrently herewith and bearing even date, as respect to premises Situate and known as 1939 South Bonsall Street, Philadelphia, Pennsylvania, And

"WHEREAS, the parties are jointly and severally indebted to various banks and loan companies in the approximate sum of Two Thousand Dollars ($2,-000.00), And

"WHEREAS, it is the desire of the parties hereto to amicably adjust and settle their differences regarding the aforesaid indebtedness and the wife's claim to reasonable support.

"NOW THEREFORE, in consideration of the premises and the various provisions of this agreement, it is hereby agreed as follows:

"1. The separate agreement respecting premises 1939 South Bonsall Street, executed simultaneously and concurrently herewith shall be part hereof."

The agreement then provides that the husband shall pay and discharge certain enumerated obligations and shall also pay the wife $30 per week for her support and maintenance until she "is able to return to her usual occupation at which time said weekly payments will be reduced to a sum agreeable to both parties. If they are unable to agree to a reduction then the matter

of support shall be referred to the Domestic Relations Division of the Municipal Court for appropriate action."

The law appears to be settled in Pennsylvania that a separation agreement containing executory provisions is abrogated by a subsequent reconciliation and cohabitation of the parties, whereas a postnuptial agreement, which is a separation settlement providing for the division and allotment of property and property interests between the parties, is not: Ray's Estate, 304 Pa. 421 (1931). Whether a contract between husband and wife constitutes a postnuptial agreement or merely a separation agreement depends upon the intent of the parties as gathered from all the facts: Commonwealth ex rel. DiValerio v. DiValerio, 169 Pa. Superior Ct. 477 (1951) ; Commonwealth ex rel. Makowski v. Makowski, 163 Pa. Superior Ct. 441 (1948).

There can be little question that in the present case if the agreement designated "Post Nuptial Agreement" stood alone, it would not be affected by the subsequent reconciliation of the parties. Does the fact that the two agreements were made and executed at the same time and that reference was made to the "Post Nuptial Agreement" in the second agreement convert the former into a simple separation agreement as Mr. Back contends?

In our opinion it does not. The fact that *two separate* agreements were made is most significant. The logical conclusion to be drawn from this circumstance is that the parties were aware of the import of a postnuptial agreement and did not intend that it be abrogated in the event of a reconciliation. To conclude otherwise would defeat the purpose of making two separate agreements, instead of including the entire understanding of the parties in one document.

An examination of the second document indicates that two references are made therein to the other agreement. In both instances it is referred to as a "separate agreement". This strongly suggests that the parties intended that the first writing should constitute a postnuptial agreement, not only by actual designation, but also in fact, with all the legal incidents appertaining to such an agreement.

We are fortified in our conclusion by the course of conduct of the surviving husband during the four years which have elapsed since his wife's death. He did several things which are inconsistent with the usual position of a surviving husband and which clearly indicate that he believed that he had surrendered all of his rights of every nature in his wife's estate: (1) Although he had first priority to have letters of administration issued to him as the surviving spouse (Fiduciaries Act of April 18, 1949, P. L. 512, sec. 305(b)(2), 20 PS §320.305), he renounced this right in favor of his stepdaughter, Gloria, (2) Although more than four years have elapsed since his wife's death, he has not claimed the family exemption to which he would have been entitled (Fiduciaries Act of 1949, sec. 211, 20 PS §320.211). (3) Although under the law he was primarily responsible for the payment of his wife's funeral bill even if she had a separate estate (see cases cited in 1 Hunter Pennsylvania Orphans' Court Commonplace Book, Husband and Wife, §1(a), p. 601), the bill was paid by the stepdaughter and not by him. (4) Instead of claiming the family exemption from premises 1939 S. Bonsall Street, the home in which the parties resided, as is the right of a surviving spouse (Fiduciaries Act of 1949, sec. 213, 20 PS §320.213), he purchased this property from the administratrix for its full appraised value.

A reasonable construction of an ambiguous contract by the parties thereto, although not conclusive, will be considered and accorded great weight, and usually will be adopted by the court: 17 C. J. S. §325, p. 755. This rule has been confirmed in our State. In Foulke v. Miller, 381 Pa. 587 (1955), Mr. Justice Bell said at page 595:

"Where a contract is reasonably capable of two different interpretations, Courts will interpret the agreements just as the parties themselves did: Alpha Claude Neon Corporation v. Pennsylvania Distilling Company, Inc., 325 Pa. 140, 188 A. 825; McMillin v. Titus, 222 Pa. 500, 72 A. 240; Gass Appeal, 73 Pa. 39, 41; Gillespie v. Iseman, 210 Pa. 1, 59 A. 266; Peoples Natural Gas Co. v. Braddock Wire Co., 155 Pa. 22, 25 A. 749; Disston Estate, 349 Pa. 129, 134, 36 A. 2d 457."

We therefore conclude that John J. Carr has surrendered all of his right, title and interest in and to the estate of his deceased wife, Rose, by reason of his entering into the Post Nuptial Agreement of August 30, 1954, with her.

And now, June 2, 1959, the account is confirmed nisi.

*Martin G. Stein,* for accountant.

*Harry R. Back,* for exceptant.

PER CURIAM, December 11, 1959.—The auditing judge ruled that abrogation of the separation agreement, which was previously executed between decedent and her surviving husband, did not of itself abrogate their postnuptial agreement also. The husband's exceptions to this ruling are before us.

John Carr, the surviving spouse, claims one-half the estate because he and decedent were living together at the time of her death. Gloria, a daughter of decedent's prior marriage and her sole surviving issue, disputes the claim of her stepfather because of a post-

nuptial agreement whereby he did "transfer, relinquish and surrender any and all right, title and interest" in his wife's property and did "remise, release and quitclaim" all his "right, title, interest, claims or allowance" in and to the same. Although the separation agreement, which was executed simultaneously with the postnuptial agreement, may indeed have been abrogated by the action of the parties in resuming their cohabitation, this abrogation cannot invalidate the postnuptial agreement in the absence of positive evidence that the parties so intended.

There is no evidence to that effect on the record. Indeed, John's conduct following the death of decedent shows that until recently he considered himself firmly bound by this written "release". More loudly than words can proclaim, his post mortem acts repudiate the good faith he now protests so vigorously. As well stated by the learned auditing judge: "He did several things which are inconsistent with the usual position of a surviving husband and which clearly indicate that he believed that he had surrendered all of his rights of every nature in his wife's estate: (1) Although he had first priority to have letters of administration issued to him as the surviving spouse (Fiduciaries Act of April 18, 1949, P. L. 512, sec. 305(b)(2), 20 PS §320.305), he renounced his right in favor of his stepdaughter Gloria. (2) Although more than four years have elapsed since his wife's death, he has not claimed the family exemption to which he would have been entitled (Fiduciaries Act of 1949, sec. 211, 20 PS §320.211). (3) Although under the law he was primarily responsible for the payment of his wife's funeral bill even if she had a separate estate (see cases cited in 1 Hunter Pennsylvania Orphans' Court Commonplace Book, Husband and Wife, §1(a), p. 601), the bill was paid by the stepdaughter and not by him. (4) Instead of claiming the family exemption from

premises 1939 S. Bonsall Street, the home in which the parties resided, as is the right of a surviving spouse (Fiduciaries Act of 1949, section 213, 20 PS §320.-213), he purchased this property from the administratrix for its full appraised value."

Where formal agreements between the same parties are prepared simultaneously but expressed in two separate writings, it is obvious that the parties intend to treat them as separate entities. Hence, even though the postnuptial agreement was expressly incorporated by reference in their separation agreement, abrogation of the latter by subsequent reconciliation of the parties would not in and of itself invalidate the other agreement. Nullification of the postnuptial agreement must hinge on the intention of the parties, and as to this, exceptant offered no competent evidence whatsoever. We are all agreed that the present facts are less favorable to exceptant than the situation in Ray's Estate, 304 Pa. 421, where provisions as to property rights and separation were included in the one agreement, and we are bound by the holding of our Supreme Court in that case.

The exceptions are dismissed and the adjudication is confirmed absolutely.