## Carnegie Estate

*Blaxter, O'Neill & Houston*, for accountant.
*Reed, Smith, Shaw & McClay*, for claimant.

WOLK, J., October 31, 1958.—Lucy C. Carnegie died on January 16, 1916, a resident of Allegheny County, leaving a last will and testament dated June 15, 1912, and codicils thereto dated January 7, 1913, and May 17, 1913, duly probated and of record in the office of the register of wills of said county.

By item one of her will, as modified by the codicils, testatrix devised her Cumberland Island real estate in Georgia to trustees for the benefit of her heirs, exclusive of her eldest son, William Coleman Carnegie. Said Cumberland Island trust is still in existence.

By item two of her will, testatrix created the Carnegie Building trust herein involved. Item two provides that as long as the Cumberland Island trust is in existence, the yearly income from the Carnegie Building trust is to be applied for the purposes of the Cumberland Island trust as far as necessary, the trustees of the Carnegie Building trust being directed:

"to pay the surplus of said income, if any, yearly during the life of the trust as to said Island property to my said children then living, and to the children of such of my named children as are then dead, the children of every deceased child taking their parent's share."

Testatrix was survived by the eight children named in her will, all of whom have since died, except Florence Carnegie Perkins. By the codicils to her will, the provisions as to the Carnegie Building trust were modified with respect to the participation of her son, William Coleman Carnegie, and his family, the effect being to devise a one-eighth interest in fee simple to him, subject to certain conditions which have been fulfilled. The one-eighth share of William Coleman Carnegie in the income and in the proceeds of the sale of the Carnegie Building property has already been distributed. We are here concerned only with the income of the remaining seven-eighths interest in the Carnegie Building Trust.

The Carnegie Building was sold under the Revised Price Act by decree of this court dated October 9, 1951, and the net proceeds of this sale, less the one-eighth share which went to the son, William Coleman. Carnegie, constitute the corpus of the Carnegie Building

trust for which the Peoples First National Bank and Trust Company is successor trustee.

Income from the Carnegie Building trust has been used for the maintenance of the Cumberland Island property from the time of Lucy Carnegie's death until the present time and it must continue to be so used until the death of Florence Carnegie Perkins, the last surviving child of Lucy C. Carnegie, the said Florence Carnegie Perkins having irrevocably renounced and released her power under the will of Lucy C. Carnegie to request the trustees to sell any of the Cumberland Island property.

The excess income from the Carnegie Building trust has been paid to the children of Lucy C. Carnegie and to the children of deceased children except in two instances. The first resulted from the death of Oliver G. Ricketson, Jr., on October 17, 1952, who was a son of Lucy C. Carnegie's daughter, Margaret Carnegie Ricketson. Margaret Carnegie Ricketson died on November 24, 1927. The second resulted from the death of Thomas M. Carnegie, Jr., on July 19, 1954, who was a son of Lucy C. Carnegie's son, Thomas Morrison Carnegie. Thomas Morrison Carnegie died on September 22, 1944. Both Oliver G. Ricketson, Jr., and Thomas M. Carnegie, Jr., were receiving a share of the excess income of the Carnegie Building trust at the time of their deaths.

Both Oliver G. Ricketson, Jr., and Thomas M. Carnegie, Jr., were survived by children, great-grandchildren of Lucy C. Carnegie. The children of Oliver G. Ricketson, Jr., are Mary Baylis Ricketson, Margaret C. R. Sprague and Oliver G. Ricketson, 3rd. The children of Thomas M. Carnegie, Jr., are Thomas M. Carnegie, 3rd, and Andrew Carnegie, 3rd.

By decree of this court dated March 30, 1955, the share of the excess income of Oliver G. Ricketson, Jr., and the share of the excess income of Thomas M. Car-

negie, Jr., was awarded to their children, said children being great-grandchildren of Lucy C. Carnegie. Briefs were filed on behalf of the great-grandchildren only. No opinion of the court was filed and no exceptions were filed to the decree of the court and distribution was made in accordance with said decree.

Carter B. Carnegie, the only other child of Thomas Morrison Carnegie, died on August 28, 1957, survived by his widow, Gertrude P. Carnegie and an adopted son, Henry Carter Carnegie, both of whom are alive. Carter B. Carnegie had been receiving one-tenth of the excess income from the Carnegie Building trust at the time of his death.

It is conceded by the parties that under the law applicable to this case, the adopted son, Henry Carter Carnegie, is not to be considered as an issue of Carter B. Carnegie.

The third account of the successor trustee, which is before this court for audit, discloses there is excess income presently distributable. The accountant has requested that only $5,000 of this excess income be distributed at this time. One-tenth thereof or $500 is claimed by Gertrude P. Carnegie, as the executrix under the will of her husband, Carter B. Carnegie, or by her as the sole legatee under his will. Letters testamentary were granted to Gertrude P. Carnegie under the name of Polly Carnegie.

This claim is opposed by Thomas M. Carnegie, 3rd, and Andrew Carnegie, 3rd, the children of Thomas M. Carnegie, Jr., who was a brother of Carter B. Carnegie. We have before us a claim for the one-tenth share of this excess income by two of the great-grandchildren of Lucy C. Carnegie as against the estate of Carter B. Carnegie, a grandchild.

A stipulation was filed at the hearing of this matter concerning the time of birth of all of the grandchildren of Lucy C. Carnegie. This stipulation indicates that

12 grandchildren were born previous to the execution of the will and codicils of Lucy C. Carnegie and were alive at her death, and two grandchildren were born subsequent to her death. There were no great-grand-children born at the time of Lucy C. Carnegie's death.

The question involved is: When testatrix directed that the surplus income, if any, from the Carnegie Building trust should be paid "yearly during the life of the trust as to said Island property to my said children then living, and to the children of such of my named children as are then dead, the children of every deceased child taking their parent's share," and one of the children of a deceased child, being a grandchild of testatrix, dies without issue, leaving to survive him children of a deceased brother, being great-grand-children of testatrix, did testatrix intend that the said great-grandchildren should participate in such income distribution to the exclusion of the estate of the said grandchild dying without issue?

While it has been stated in many decisions that a bequest to "children" will not be given the broad interpretation of "grandchildren" or "issue", this is not true where the general plan of testator in his will indicates a family distribution among lineal descendants: Campbell's Estate, 202 Pa. 459 (1902); Disston Estate, 349 Pa. 129 (1944); Clark Estate, 359 Pa. 411 (1948).

The intention of a testator is the polar star in the construction of wills and that intention is to be gathered from the whole will and is not limited to any particular clause: Mulert Estate, 360 Pa. 356 (1948).

The will and codicils of Lucy C. Carnegie are quite lengthy. When one reads them over and over again, the conclusion is inevitable that testatrix intended to send the surplus income from the Carnegie Building trust down in the line of her blood, so that it would remain in the Carnegie family.

We will discuss this matter at greater length later, but now let us examine the case of Clark Estate, supra, which in our opinion controls the present case. It is unnecessary to analyze other cases that are relevant for the reason that they are discussed fully in Clark Estate.

The only substantial difference between Clark Estate and the matter before us is in the Clark Estate the court was concerned with a distribution of corpus, and in our case we are concerned with the distribution of income. We believe that this difference is of no significance. It is this writer's opinion that the analysis of the Lucy C. Carnegie will and codicils will indicate the case before us is much stronger than the Clark Estate.

Before discussing the Clark Estate more fully, one point raised by counsel for the wife of Carter B. Carnegie should be disposed of. Counsel emphasizes that the words "per stirpes" are used in the provision for distributing the corpus in the Clark Estate and they are not used in the will of Lucy C. Carnegie. When the expression "per stirpes" is defined, this emphasis has no validity.

In Black's Law Dictionary, page 1349, the expression "per stirpes" is defined as follows:

"Per stirpes. Lat. By roots or stocks; by representation. This term, derived from the civil law, is much used in the law of descents and distribution, and denotes that method of dividing an intestate estate where a class or group of distributees take the share which their deceased would have been entitled to, taking thus by their right of representing such ancestor, and not as so many individuals. . . . In re Shoch's Estate, 271 Pa. 165, 114 A. 505, 506; Petition of Gee, 44 R.I. 132, 115 A. 716, 717."

The words that testatrix used in item two are exactly what the expression "per stirpes" mean. They

denote a class of distributees taking the share of their deceased ancestor by right of representation. These words are, "the children of every deceased child taking their parent's share." The Clark Estate will uses a similar expression after per stirpes, to wit, "they shall take by representation of their parents".

Clark Estate, supra, contains an exhaustive review of the applicable authorities and is so close to the case at bar in its facts and surrounding circumstances that we shall quote from it at some length. John S. Clark died in 1885 leaving a wife and nine children to survive. His wife died in 1914 and he provided in his testamentary trust that the income should be equally divided among his children during their respective lives, but "should any of my children die leaving a child or children, then such child, or children shall take such portion of the income of my Estate as the parent of such child, or children would have taken if living." As to the principal of the trust, testator provided that: "After the death of all my children, then my Estate shall be equally divided among their living children—per stirpes—that is, they shall take by representation of their parents, respectively, and not per capita." The last survivor of testator's children died on March 3, 1947.

It will be noted that the language in the Clark Estate as to the distribution of income has the same import as the language in the will of Lucy C. Carnegie.

As set forth on page 415 of the opinion in the Clark Estate, the Orphans' Court of Philadelphia County in 1938, 1944 and 1947 held that, where a grandchild died, being the child of a deceased child of testator, his share of the income should thereafter be paid to his children, being the great-grandchildren of testator. No exceptions were filed to any of these adjudications awarding income to the great-grandchildren.

It will be noted that Judge Cox of the Orphans'

Court of Allegheny County made a similar decree on March 30, 1955, in favor of the great-grandchildren of Lucy C. Carnegie.

On the death of the last child in 1947 in the Clark Estate, the grandchildren contended that the great-grandchildren should be excluded from any share of the principal of the trust estate. The Orphans' Court of Philadelphia County in an opinion reported in 61 D. & C. 34, held that the term "children" of deceased children will be construed in the sense of "issue" and great-grandchildren, the children of deceased grandchildren, will be permitted to share in the distribution of corpus. The Supreme Court affirmed the decree of the Orphans' Court. The Supreme Court, after reviewing some well-settled canons of construction, said at pages 419 and 420:

"The application of these canons to the will now before us leads to the conclusion that although the terminology employed by the will is susceptible of two interpretations, it is more 'agreeable to reason and justice' to reject the narrow interpretation of the word 'children' contended for by appellants and hold that the word 'children' as used in the third paragraph of the will in connection with the phrase 'per stirpes, that is, they shall take by representation of their parents, respectively, and not per capita' includes the grandchildren of testator's immediate children. When a testator directs, as did this testator, that after the death of all his children, his estate shall be divided among 'their living children, per stirpes,' he was obviously thinking of his descendants as they stemmed from his children and he directed that they take his estate by 'representation of their parents, respectively, and not per capita.'

"Appellants contend that the per stirpital distribution stopped with testator's grandchildren. We cannot accept this contention when we give due regard to the

natural impulses and feelings of mankind and consideration for the general laws of descent and rules for the disposition of estates in determining the testator's intention for the purpose of construing a will. See Runyan v. Rivers, 99 Ind. App. 680, 192 N. E. 327. *It is a well recognized canon that where language is equivocal a construction enuring to the benefit of remote lineal descendants is preferred to one which favors immediate issue exclusively.* (Emphasis supplied.) When Clark died he had no great-grandchildren living. He must have realized that when his trust would terminate he would be likely to have some great-grandchildren and it is inconceivable that he would intend that if the parents of these great-grandchildren were dead upon the trust's termination they would not take as representatives their parents' fair share of the estate.

"In Ball v. Weightman et al., 273 Pa. 120, it was held that the term 'grandchildren' may or may not embrace great-grandchildren according to the meaning of the testator to be ascertained from an examination of the entire will. The Court in its opinion said: 'Standing alone it [grandchildren] is restricted to children's children, but it may be enlarged by the context so as to embrace great-grandchildren or even more remote descendants. Where there is something to extend the natural signification of the term "grandchildren" it may include great-grandchildren: Horn v. Van Schaick, 3 Barbour's Chancery Reports 488, 508; see also the opinion of the late Judge Hawkins, In re Estate of Andrew Morton, 32 Pitts. L. J. (N.S.) 406. In the language of Yeates, J., in the leading case of Pemberton v. Parke et al., 5 Binney 601, 609, "Grandchildren are words of equivocal import, and may or may not include great-grandchildren, according to the sense in which they may have been used by a testator, collected from the whole of his will." ' "

638

In the Clark Estate the court gave great weight to the surrounding circumstances in reaching its conclusion, saying at page 422:

"It must be taken for granted that during the seven years which elapsed between the making of the Clark will and its becoming operative at the time of its maker's death, Mr. Clark knew that the corpus of the trust fund he created would not be divided among his heirs until after the lapse of a long period of time (in fact it proved to be 69 years after the date of the will). It must also be assumed that he knew that at the time the corpus would be divided. there would probably be not only grandchildren but also great-grandchildren and that there was at least a natural likelihood that the Clark-blooded parents of some of these great-grandchildren might not then be living.

"It is inconceivable that with all this within the testator's reasonable contemplation he ever intended (1) that in the contingency stated (and which actually came to pass) the great-grandchildren would be denied that fair share of the Clark estate which so clearly would have been their Clark-blooded parents' share had these parents been living at the time of the termination of the trust, and (2) that the portion thus denied the great-grandchildren under a narrow construction of the terms of the will would be added to the portions of the grandchildren who were first cousins once removed of the great-grandchildren.

"*No court will adopt a testamentary construction which will bring about such an unnatural and inequitable distribution of testator's property unless the language of the will unequivocally requires it. The language of this will makes no such requirement.* (Emphasis supplied.) When the testator provided for the distribution of his trust estate among 'the living children' of his deceased children 'per stirpes—that is,

. . . by representation of their parents, respectively . . .', he obviously intended to include in the term 'their living children' not only the second generation of children after him but also the third generation."

Thus the underlying basis of the decision in Clark Estate was that the testamentary plan contemplated a trust of long duration, which would ultimately involve situations where great-grandchildren as well as grandchildren would have to participate in distribution to accomplish an equitable distribution among lineal descendants, and there was nothing in the will which clearly indicated that testator intended that his will should be narrowly interpreted to deprive great-grandchildren of their fair share. The same situation exists in the Lucy C. Carnegie will. Under such circumstances, a bequest of income to the "children" of deceased children of testatrix is an "equivocal" expression which will be construed as meaning the "issue" of deceased children, because "where language is equivocal a construction enuring to the benefit of remote lineal descendants is preferred to one which favors immediate issue exclusively": Clark Estate, supra, p. 420.

Now let us examine the will and codicils of Lucy C. Carnegie more closely. Testatrix owned a fabulous estate in the State of Georgia, known as Cumberland Island. She wanted her children to have the use of this estate, rent free, with homes erected thereon for each of her children. Since the trust for the Cumberland Island is irrevocable until Florence Carnegie Perkins, the last survivor of her children, dies, as hereinbefore set forth, this trust is still in effect. As a result thereof, the Carnegie Building trust is also still in effect. Item four of the will of testatrix creates a third trust, to wit, a trust for the residuary estate. Each of these trusts is for the benefit of all of

the children except her son, William Coleman Carnegie, who is treated specially by the codicils.

A phrase similar to the following, "and to the children of such of my named children as are then dead, the children of every deceased child taking their parent's share," appears nine times throughout the will and codicils, and in eight of these nine times no provision is made for the wives or husbands of deceased children dying without issue.

The phrase appears in item one, paragraph (d) of the will; in item two, first paragraph of the will, the provision before us for interpretation; in item two, second paragraph, the phrase appears twice; in paragraph "second" of the codicil dated January 7, 1913; in paragraph "third" (b) of the said codicil the phrase appears twice; and it also appears in paragraph "fourth" (d) of said codicil.

When we come to item four of the will, the residuary clause creating the third trust, there testatrix does take care of the wife of a deceased child. This trust was created for a term of 10 years and provides for the payment of the net income at least quarterly in the same manner as provided in item two, first paragraph of the will, except that there is a provision for a wife of a deceased child dying without issue. Testatrix provides that the wife of a deceased son shall receive his share of the income during the term of 10 years or until her death within said 10 years, and further provides that after the expiration of 10 years the income on the share of the corpus that a son, leaving no child or children living, would have received had he been living, shall be distributed to the wife of the deceased son.

The logical conclusion is that testatrix set forth what she intended when she desired those not of her own blood to benefit from her estate, and the further conclusion is logical that since she did not provide for

wives of her sons dying without issue in item two, first paragraph, which is before us for consideration, she was thinking only of those of her own blood. Her children living at her death were her first concern. They are the primary objects of her bounty. If the contention of counsel for the wife of Carter B. Carnegie, a grandson, is correct, then testatrix was more concerned about the wives of grandchildren who died without issue than she was concerned with the wives of sons who died without issue. This is an illogical conclusion.

Reading the will and codicils in their entirety, we cannot escape the just conclusion that when testatrix used the word "children" she intended "issue." In item four of the will creating the third trust, testatrix expressly indicates she is using the phrase "children" of a deceased child in the sense of "issue." In item four she directed the income to be paid quarterly "to my named children then living, and to the children of my said children as are then dead, the children of every deceased child taking their parent's share." Immediately following this language testatrix bequeathed a share of income to the wife of a deceased son "in the event that any of my said named sons die without issue." Finally, testatrix created a spendthrift trust in the last paragraph of item four, in which she plainly indicates that when she speaks of her "grandchildren" she is referring to "issue" of her deceased children. The last paragraph of item four reads as follows:

"In *all* cases where I have *hereinbefore* directed the distribution of principal or income to my said children or *grandchildren, the issue of my named children,* or to a wife of any of my deceased sons, I forbid such principal or income to be assigned, pledged or anticipated by operation of law or otherwise, and I direct the payment to be made only into the hands of the beneficiaries named." (Italics supplied)

Counsel for the wife of Carter B. Carnegie interprets the words "the issue of my named children" as a separate classification. The proper grammatical construction is that those words describe the word "grandchildren." In order to obtain the construction that counsel desires to give, there should have been an "or" before the words "the issue." Testatrix set forth three classifications and not four, "children," "grandchildren, the issue of my named children" and the "wife of any of my deceased sons."

The conclusion is inevitable, from an examination of the whole will and codicils, that testatrix used the word "children" to mean "issue," and that the children of Thomas M. Carnegie, Jr., being great-grandchildren of Lucy C. Carnegie, should take the share of the surplus income in the Carnegie Building trust which their uncle, Carter B. Carnegie, received in his lifetime, to the exclusion of the estate or the wife of Carter B. Carnegie.

The foregoing analysis of the will and codicils of Lucy C. Carnegie indicate that the case before us is even stronger than the Clark Estate.

Assuming, merely arguendo, that the conclusion heretofore reached is incorrect, the estate or wife of Carter B. Carnegie would not be entitled under any circumstances to any *future* income from the Carnegie Building trust. Counsel for said estate and wife relies on Long's Estate, 228 Pa. 594 (1910), which can be definitely distinguished from the case at bar. Long's Estate is cited for the proposition that the share of the income that Carter B. Carnegie was receiving in his lifetime was vested and therefore on his death, should be distributed to his estate as long as the Carnegie Building trust continued.

It is true that in Long's Estate the share of income that a deceased grandchild was receiving in her lifetime was awarded to the administrator of her estate.

An examination of the opinion in that case will clearly indicate that the provisions of the will are altogether different from the provisions of the will of Lucy C. Carnegie.

In Long's Estate, testator provided, page 596 of the opinion, after creating the trust, as follows:

" 'I further provide and direct that when there is a greater accumulation than he deems necessary for the purposes of this trust he shall divide the same into six equal shares, paying one share to each of my five children and one share to be divided amongst the children of my deceased son, Ira L. Long. And if any of my children should die without leaving lineal descendants, before the expiration of twenty years after my decease, then such share shall go to the other legatees share and share alike—parties taking per stirpes and not per capita.' "

Testator left to survive him one son and four daughters and, among other grandchildren, four grandchildren who were children of a deceased son, Ira L. Long. One of the children of Ira L. Long died intestate, leaving to survive her no children, but a husband, to whom letters of administration were granted. On the fourteenth partial account of testator's trust, the children of Ira L. Long were entitled to one-sixth of the income, which an auditor was appointed to distribute. The three surviving children of Ira L. Long claimed the entire fund for distribution, maintaining that the legacy to the fourth child, who had died, was contingent, or if vested, was divested by her death. The administrator claimed one-fourth of the fund on the ground that the legacy was vested and not divested by her death. The auditor sustained the latter contention. The lower court held otherwise and an appeal was taken to the Superior Court and the lower court was reversed and the decree of the Superior Court was affirmed per curiam by the Supreme Court.

In the Long Estate testator had five children living when he executed his will, and these five children were living at his death. When he executed his will he had four grandchildren living, who were children of a deceased son, and these four grandchildren were living at his death. In his will testator divided the income involved into six equal shares, paying one share to each of his five children and one share to be divided amongst the children of his deceased son. What testator really provided was, to give one-sixth of the income to each of his five children and one twenty-fourth to each of four grandchildren, children of a son who was deceased at the time of the execution of his will. This situation is entirely different from the case at bar. In our case the surplus income is to be paid to the children of testatrix then living, "and to the children of such of my named children as are then dead, the children of every deceased child taking their parent's share." In the case at bar, the children of a deceased child, being grandchildren of Lucy C. Carnegie, take as a class. In Long's Estate the grandchildren do not take as a class, but as individuals.

Continuing, merely arguendo, this distinction becomes very significant in view of our conclusion arising from the language in the will of Lucy C. Carnegie. If "the children of every deceased child taking their parent's share," take as members of a class, then when a member of a class dies, the survivors take the share of the deceased as against his personal representative: Smith Estate, 110 Pa. Superior Ct. 469, (1933) ; Boyer's Estate, 115 Pa. Superior Ct. 501 (1934) ; Anderson Estate, 165 Pa. Superior Ct. 353 (1949) ; Wood's Estate, 321 Pa. 497 (1936).

Carter B. Carnegie and Thomas M. Carnegie, Jr., were brothers and the only children of their father, who was a son of Lucy C. Carnegie. Thomas M. Carnegie, Jr., died before Carter B. Carnegie. After the

audit of the second and partial account, a decree was entered by the auditing judge on March 30, 1955, decreeing the one-tenth share of the surplus income which Thomas M. Carnegie, Jr., was receiving in his lifetime, to his two sons, great-grandchildren of Lucy C. Carnegie. Continuing, merely arguendo, Carter B. Carnegie, as a survivor of his brother, Thomas M. Carnegie, Jr., might have raised the question that he was entitled to said income as a survivor of the class, but no exceptions were filed to the decree of the auditing judge. Can the estate of Carter B. Carnegie now claim the income which Thomas M. Carnegie, Jr., if alive, might have been entitled to, for the period from the date of the decree made on March 30, 1955, until the death of Carter B. Carnegie? This question was not even raised or suggested at the argument of this case. Query: Since the fund, the Carnegie Building trust, which is now before us is the same fund which was before the auditing judge in 1955, is not the decree made on March 30, 1955, res judicata: Gould's Estate, 270 Pa. 535 (1921)?

It is unnecessary to continue this line of reasoning further, as the writer is convinced after an examination of the entire will and the codicils of Lucy C. Carnegie, and under the Clark Estate, supra, that the children of Thomas M. Carnegie, Jr., being great-grandchildren of Lucy C. Carnegie, are entitled to the one-tenth share of the surplus income to which Carter B. Carnegie would be entitled, if living.

A decree will be entered in accordance with this opinion.

### Decree

And now, to wit, October 31, 1958, the account in this case having been filed and confirmed nisi and having been examined and audited by the court, upon consideration thereof it is decreed that the account be confirmed absolutely, and that the funds in the hands

646

of the accountant, to wit, $1,366,686.66, be paid in accordance with the schedule of distribution hereto attached and made part hereof unless exceptions are filed within 10 days.